A93A0488. BROWN v. SOUTHERN BELL TELEPHONE & TELEGRAPH COMPANY et al.

(432 SE2d 675)

SMITH, Judge.

Mason Brown appeals from the grant of summary judgment in favor of Southern Bell Telephone & Telegraph Company and Troup Electrical Membership Corporation in Brown's action to recover damages for injuries sustained after coming into contact with an uninsulated electrical distribution line owned by the EMC. We affirm.

The record shows that the incident occurred late on a Saturday afternoon when Brown, who is employed by a trucking company but also owns and rents out heavy equipment, was delivering a front-end loader to a location along a privately owned roadway. He was driving a dump truck and towing a low-boy trailer, on which the loader had been placed, when an overhead telephone wire owned and maintained by Southern Bell caught on the roof of the loader's cab, preventing Brown from progressing. He looked out the window of his truck and observed the telephone wire moving. He let the truck roll back about six inches to release the tension on the wire in an unsuccessful attempt to free it. He had a radio in his truck on which he could call a trucking company's headquarters or other trucks, but did not use it to call for help because no one was in the office on Saturday, and because freeing the wire himself "didn't look that hard." He then climbed up on the roof of the loader and used a rubber strap from the truck to pull the telephone wire out and free it.

The telephone wire was the lowest of three wires overhead. It was 11′ 1″ from the ground, as measured after the incident. Above it were an insulated neutral wire and an uninsulated primary, or high-voltage distribution wire, owned by the EMC, which were later determined to be 18′ 5″ and 21′ 1″ from the ground, respectively. He had freed the telephone wire and intended to pull it behind him when he made contact with the uninsulated primary wire and was shocked, causing him to fall from the loader's roof to the ground, further injuring himself.

Although Brown could not recall seeing the wires before that day, he observed them as he was driving along the road and noticed them when on the roof of the loader. He testified that the height of his load was over 13′. It was measured after the accident and found to be

13´ 9´´.

1. A conflict exists in the evidence regarding whether the roadway on which the incident occurred must be considered "subject to truck traffic," which is determinative of the clearance required under industry standards set forth in the National Electrical Safety Code. It is clear, however, that the neutral wire could not have caused the burns, and under either possible standard, Brown has admitted, and his expert has testified, that the primary wire met industry clearance standards.

At the time of the incident, the High Voltage Safety Act,[1] OCGA § 46-3-30 et seq., prohibited the transportation of machinery or equipment within eight feet of uninsulated high-voltage lines unless and until notice was given to the utility by the person responsible for the work and the utility guarded against danger from accidental contact. Former OCGA §§ 46-3-32 (a); 46-3-33.

Given that Brown's load was 13´ 9´´ high and the primary wire was 21´ 1´´ from the ground, it is clear that Brown was transporting equipment within eight feet of the uninsulated primary line. The primary line met the clearance standard, and Brown admitted he gave no notice to the EMC either before transporting the load on the roadway or before climbing the loader. Under these circumstances, Brown's claim of negligence against the EMC is barred. *Malvarez v. Ga. Power Co.*, 250 Ga. 568 (300 SE2d 145) (1983). Summary judgment was properly granted in favor of Troup EMC.

2. The Southern Bell wire was insulated and had no defects in the insulation. It therefore could not have caused Brown's injuries. However, even were we to assume that Southern Bell was somehow negligent in installing or maintaining the wire, as contended by Brown, it is clear that Brown assumed the risk, and that his own negligence was the proximate cause of his injuries.

Brown testified that he had seen the power lines when he climbed up on the loader. Although he may not have known exactly how close the power lines were, he knew there was a risk but just "never thought about it." He had been around power lines before in connection with his work, knew that some were uninsulated, and appreciated that getting within ten feet of one was dangerous. He is over six feet tall. If he had stood upright atop the loader's roof the neutral wire would have been approximately chin or shoulder high and the primary wire would necessarily have been within arm's reach. He used a rubber strap because, although he did not think telephone lines carried much voltage, he was not sure, and did not know if snagging on

---

[1] The Act was amended effective July 1, 1992, and the Code sections were renumbered. Present OCGA § 46-3-33 requires notification if work is done within ten feet of high-voltage lines.

the loader had skinned it. He had the option of calling for help over his radio, or he could have approached any of the nearby homes to use the telephone, yet he voluntarily chose to climb up over 13′ — in itself a dangerous activity — and try to free the telephone wire, knowing that he was near high-voltage lines.

"A person cannot undertake to do what is obviously a dangerous thing and at the same time avoid the responsibility for the self-assumed risk." *First Pacific Mgmt. Corp. v. O'Brien*, 184 Ga. App. 277, 281 (361 SE2d 261) (1987). Here, as in *Mann v. Hart County EMC*, 180 Ga. App. 340 (349 SE2d 215) (1986), Brown tested a known danger, thereby relieving Southern Bell from liability for any alleged negligence on its part. From Brown's own testimony, it is apparent as a matter of law that by calling for assistance and refraining from climbing on top of the loader he could have avoided the consequences to himself of any negligence on the part of Southern Bell. It is likewise apparent that he was fully aware of the danger involved. See *Ga. Power Co. v. Purser*, 152 Ga. App. 181, 182 (262 SE2d 473) (1979). He nevertheless proceeded, and was injured. Because he assumed the risk, the trial court properly entered summary judgment for defendants. *Sapp v. Effingham County Bd. of Ed.*, 200 Ga. App. 695, 696 (1) (409 SE2d 89) (1991).

*Judgment affirmed. Johnson and Blackburn, JJ., concur.*

DECIDED JUNE 17, 1993.

*Samuel W. Oates, Jr.*, for appellant.

*Jones, Cork & Miller, C. Ashley Royal, H. Jerome Strickland, Gray, Gilliland & Gold, T. Cullen Gilliland, John B. Austin, James R. Thompson*, for appellees.

