A99A0597. JIMENEZ et al. v. MORGAN DRIVE AWAY, INC. et al.
(519 SE2d 722)

JOHNSON, Chief Judge.

This case arises out of an accident in which a tractor-trailer pulling an oversize load struck a disabled truck as it sat in the emergency lane of the highway. The injured driver of the disabled truck and his wife sued the tractor-trailer driver, his employer, and the employer's insurance carrier. The jury returned a verdict in favor of the defendants. In this appeal, we decide whether the trial court erred in giving the defendants' requested charges on the principles of assumption of risk, comparative and contributory negligence, and sudden emergency. Under the circumstances presented here, we find the assumption of risk charge should not have been given and reverse the judgment of the trial court. The other enumerated errors are without merit or were not preserved.

The transcript reveals that Leonardo Jimenez was driving a pickup truck eastbound on I-285 when the clutch malfunctioned. The truck lost its power and Jimenez steered the disabled vehicle onto the paved emergency shoulder just before the Bouldercrest Road exit ramp. According to Jimenez, he parked the truck four to five feet to the right of the white fog line, well inside the emergency shoulder and off the roadway. The pickup truck was eight feet wide, and the emergency lane was eleven feet, three inches wide. Jimenez got out of the truck and knelt down in front of the truck to inspect it.

Steve O'Neal was part of a four-person team hauling mobile homes which were between 13½ feet and 14 feet wide. The team was traveling on I-675. O'Neal's partner was in front, pulling one mobile

home; he was followed by an escort, then O'Neal, then O'Neal's escort. The vehicles were all at least 100 feet apart, and the escort vehicle traveling in front of O'Neal was "a good piece" in front of him.

O'Neal, following his partner and the partner's escort, drove his tractor-trailer onto the I-675 exit ramp to enter I-285 eastbound. When O'Neal got to the bottom of the ramp, he began building his speed so as to merge with the traffic on I-285. After he got off the ramp and into the travel lane, O'Neal's partner informed him by radio that a truck was parked "close to the right (emergency) line." The travel lanes were only 11¾ feet wide; thus, the mobile homes extended beyond the travel lanes, on one side or the other, and sometimes on both sides. O'Neal's partner, the partner's escort, and dozens of other cars and tractor-trailers successfully passed the truck. O'Neal radioed his own escort who was traveling behind him, warned him of the situation and advised him to change lanes. O'Neal attempted to change lanes but was unable to do so because a tractor-trailer was traveling in the lane next to him. In an effort to avoid hitting the disabled truck, O'Neal applied his brakes and moved his truck as far to the left of his lane as he could. O'Neal's tractor made it past Jimenez's truck, but the mobile home he was hauling struck the rear of the truck. Jimenez was knocked under his truck and severely injured. The collision occurred three to five minutes after Jimenez parked his truck on the emergency shoulder.

Jimenez and his wife, Debra Chambers, sued O'Neal, O'Neal's employer, Morgan Drive Away, Inc., and Empire Fire and Marine Insurance (collectively "Morgan Drive Away"). Jimenez and Chambers appeal from the judgment entered on the jury's verdict.

1. We agree with Jimenez and Chambers that the trial court erred in instructing the jury on assumption of risk.

> Assumption of risk assumes that the actor, without coercion of circumstances, chooses a course of action with full knowledge of its danger and while exercising a free choice as to whether to engage in the act or not.

(Citations and punctuation omitted.) *Henderson v. Lowe's Home Centers*, 234 Ga. App. 573 (507 SE2d 159) (1998). "The knowledge requirement does not refer to a plaintiff's comprehension of general, non-specific risks that might be associated with such conditions or activities." (Citation and punctuation omitted.) *Trustees of Trinity College v. Ferris*, 228 Ga. App. 476, 479 (3) (491 SE2d 909) (1997).

In this case there was no evidence that Jimenez knowingly chose a dangerous course of conduct, fully appreciating the particular risk of harm associated with his conduct. Indeed, by steering his disabled truck out of the travel lanes and onto the paved emergency shoulder,

the evidence shows he was attempting to prevent a collision. Since there was no evidence that Jimenez voluntarily exposed himself to the danger of being struck while on the emergency shoulder, he did not assume the risk of the injury incurred. See generally *Sutton v. Sumner*, 224 Ga. App. 857, 860 (482 SE2d 486) (1997); *Beringause v. Fogleman Truck Lines*, 200 Ga. App. 822, 824-825 (4) (409 SE2d 524) (1991); *Meacham v. Barber*, 183 Ga. App. 533, 537 (3) (359 SE2d 424) (1987).

Morgan Drive Away argues Jimenez assumed the risk of injury by not parking the truck fully inside the emergency lane and by driving the truck onto the highway when he knew the clutch was malfunctioning. We disagree.

First, even if the truck was not completely in the emergency lane, an assumption of risk charge was not justified. There was no evidence that Jimenez exercised free choice as to where he would park the truck. See generally *Henderson*, supra. Indeed, the evidence indicates that the truck Jimenez was driving lost all power and coasted to a stop.

Second, Jimenez's decision to drive onto the highway and then park the truck off the roadway cannot be found to evince his consent that other drivers not use care to watch for and avoid hitting his truck. See *Beringause*, supra at 823 (4).

This is not the type of situation contemplated by the assumption of risk defense. Assumption of risk means that the plaintiff knows of the danger and intelligently acquiesces in it. *Gaffron v. MARTA*, 229 Ga. App. 426, 431 (2) (494 SE2d 54) (1997). Assumption of risk further

> means that the plaintiff, in advance, has given his consent to relieve the defendant of an obligation of conduct toward him, and to take his chances of injury from a known risk arising from what the defendant is to do or leave undone.

(Citation omitted.) *Vaughn v. Pleasent*, 266 Ga. 862, 864 (1) (471 SE2d 866) (1996).

Jimenez's knowledge of the dangers of driving a truck on the highway when the clutch is malfunctioning and parking a disabled truck in the emergency lane is not sufficient to establish knowledge that a vehicle would come into the emergency lane and strike the truck. A jury was not authorized to find from the evidence presented here that Jimenez assumed the risk that he would be injured under the circumstances he faced here. The trial court erred in giving the charge. Because we cannot say that the error was harmless, the judgment must be reversed. See *Vaughn*, supra; *Gaffron*, supra at 432 (2).

2. Because the issues of whether charges on sudden emergency

and contributory and comparative negligence are authorized in this case are likely to recur on retrial, we will address those issues here.

(a) We do not agree with Jimenez and Chambers that the trial court erred in giving a charge on sudden emergency. The defense of emergency is available where the evidence shows that there has been a sudden peril caused by circumstances in which the defendant did not participate and which offered him a choice of conduct without time for thought; under such circumstances, negligence in his choice might be attributable not to lack of care but to lack of time to assess the situation. *Thomas v. Stairs*, 215 Ga. App. 288, 289 (1) (450 SE2d 326) (1994). Where there is any evidence, however slight, on an issue, it is not error to charge the law on that issue. *Hicks v. Doe*, 206 Ga. App. 596, 598 (426 SE2d 174) (1992). The record before us includes some evidence supporting a sudden emergency charge.

O'Neal testified that immediately after receiving the call from the tractor-trailer traveling ahead of him that a truck was parked near the white line marking the emergency lane, he radioed his escort and told him to try to change lanes. O'Neal testified that they were unable to do so because a tractor-trailer was in the adjacent lane. O'Neal further testified that he applied his brakes and moved over in his lane as far as possible to avoid hitting the truck, but was unable to pass the disabled truck without striking it. This testimony constitutes some evidence of an emergency.

Noticeably absent from the record is any evidence as to the distance traveled between the point at which O'Neal received the radio warning and the point at which the mobile home struck the disabled truck. Nor is there any evidence of how much time elapsed between the warning and the collision. Thus, it is not clear from the record what opportunity O'Neal had to assess the situation. Whether a sudden emergency existed could very well depend upon whether, for example, O'Neal had ten seconds versus forty-five seconds to assess the situation, and whether he had one hundred feet versus two-thirds of a mile in which to do so. Given the record before us, we cannot say that a charge on sudden emergency was not authorized by the evidence.

(b) Nor did the trial court err in charging the jury on comparative and contributory negligence.

O'Neal testified that one of the tires on Jimenez's truck "was right there the [sic] by white line. That would put the body hanging over" into the travel lane. Although there was also direct testimony showing the disabled truck was completely within the emergency lane, there being some evidence that the truck was parked partially in the travel lane, the charge on contributory and comparative negligence was authorized. See generally *Transouthern Freight Systems v. Astley*, 201 Ga. App. 521, 522 (2) (411 SE2d 501) (1991).

3. Jimenez's and Chambers' contention that the trial court erred in giving a charge on avoidance was not preserved for review. See *Orr v. CSX Transp.*, 233 Ga. App. 530, 531 (2) (a) (505 SE2d 45) (1998).

4. The trial court did not err in excluding expert testimony regarding a federal Department of Transportation regulation purportedly requiring drivers involved in collisions to immediately stop or return to the scene and render assistance to injured persons. The evidence shows that O'Neal stopped his tractor-trailer one-quarter of a mile from the accident site, waited at his truck and talked to investigators for several hours after the collision. The claim of Jimenez and Chambers that O'Neal was a "hit and run" driver is belied by the record. Whether evidence is admissible is a question for the trial court and, unless the trial court has abused its discretion, we will not interfere. *Loper v. Drury*, 211 Ga. App. 478, 479 (1) (440 SE2d 32) (1993) (physical precedent only). The trial court did not abuse its discretion in excluding the evidence.

*Judgment reversed. Andrews and Ruffin, JJ., concur.*

DECIDED JUNE 23, 1999.

*Falanga & Chalker, Robert A. Falanga, David S. Bills*, for appellants.

*Dennis, Corry & Porter, Frederick D. Evans III, Albert M. Yates III, Donahue, Hoey, Rawls, Skesvold & Richards, Craig R. White*, for appellees.